583 A.2d 1236

**Lisle Ann JACKSON, Appellant,**

v.

**Lowell R. CULP, Appellee.**

Superior Court of Pennsylvania.

Argued April 3, 1990.

Filed Dec. 27, 1990.

Gregory H. Chelak, Chambersburg, for appellant.

John J. Hovan, Tunkhannock, for appellee.

Before McEWEN, MONTEMURO and KELLY, JJ.

KELLY, Judge:

In this case we address procedural issues regarding a pre–1988, unmerged marital settlement agreement (MSA) and the proper mode of enforcement for such an agreement. We find the proceedings in the instant case severally flawed, and vacate the order entered by the trial court.

The facts and procedural history are as follows. Lisle and Lowell were divorced in Wyoming County on August 9, 1984. They had no children. Prior to the divorce, the parties entered a Marital Settlement Agreement (MSA) which provided for distribution of their property and payment of alimony to Lisle. The agreement was signed on March 5, 1984. Lowell failed to make the agreed upon monthly payments beginning August 1985. Lisle then filed a civil contempt petition against Lowell in Wyoming County on July 13, 1989. In response Lowell brought a petition under the Pennsylvania Divorce Code attacking the validity of the Marital Settlement Agreement. The Wyoming County Common Pleas Court treated Lowell's petition as a petition for modification of a support order. Pursuant to the Divorce Code, 23 P.S. § 507, the trial court denied Lisle any further alimony effective January 1, 1988. Lisle then brought this timely appeal.

Lowell and Lisle entered into a MSA on March 5, 1984 in anticipation of their subsequent divorce. The decree of

divorce entered August 9, 1984 incorporated the MSA but did not mention merger. The issue of merger at this juncture was integral to the parties future rights under the MSA and the Divorce Code in existence at that time and, ultimately, to their rights under the Divorce Code as amended in 1988.

In Pennsylvania, a settlement agreement between a husband and wife is governed by the law of contracts unless the agreement itself provides otherwise. *Caccavo v. Caccavo*, 388 Pa.Super. 459, 565 A.2d 1199 (1989); *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988); *Vankirk v. Vankirk*, 336 Pa.Super. 502, 485 A.2d 1194 (1984); *Litwack v. Litwack*, 289 Pa.Super. 405, 433 A.2d 514 (1981). Hence, when the language of such an agreement is clear and unambiguous, the focus of the interpretation must be upon the terms as manifestly expressed. *Caccavo, supra*, 565 A.2d at 1202.

■ Our review of the MSA revealed its language to be clear and unambiguous in unequivocally evincing the parties intent that the "agreement shall survive an action for divorce and decree of divorce and shall *forever* be binding and conclusive on the parties" and *"no modification* or waiver of any of the terms hereof shall be valid *unless in writing and signed by both parties"* (emphasis added) (MSA items 3, 13). Lowell and Lisle's MSA, by its own terms, was a contract separate and independent of the divorce decree and enforceable under assumpsit and equity principles rather than under the Divorce Code until 1988. The 1988 Amendment to the Divorce Code allows *enforcement but not modification* of an unmerged MSA under the Code. *See* 23 P.S. § 401.1(b) and (c). *Cf. DeMatteis v. DeMatteis*, 399 Pa.Super. 421, 582 A.2d 666 (1990).

We find no anomoly in applying the enforcement procedures provided by the 1988 Amendment to a pre–1988 MSA while refusing to apply other provisions of the Amendment which would involve a change in obligations of the parties. The language of the parties' MSA specifically provided for a modification procedure but did not specify a particular

manner of enforcement. Prior to the 1988 Amendments there was no provision for enforcement of nonmodifiable, unmerged MSA's under the Divorce Code, and so an action in assumpsit was used as in any other contract action. The 1988 Amendment does not preclude a complaint in assumpsit; it merely facilitates enforcement of the MSA by providing an alternative enforcement vehicle in the form of civil contempt complaint. The amendment neither adds to nor subtracts from the substantive rights of the parties under their MSA; rather, it merely provides an additional procedural vehicle for the enforcement of their respective rights under their MSA.

Originally, when Lowell stopped making payments as required by the MSA, Lisle properly brought a complaint in assumpsit to enforce the contract with Lowell. We do not have the records or even the docket entries from the assumpsit action, which was brought in Lackawanna County. Assuming, *arguendo,* Lisle's complaint filed in Wyoming County is an accurate report of the proceedings in Lackawanna County, default judgment was entered against Lowell when he failed to respond to the complaint filed against him pursuant to Pa.R.C.P. 1037. We will assume that entry of judgment in Lackawanna County was procedurally correct. Assuming Lowell failed to comply with the directive of the Lackawanna County court further enforcement action could then have been pursued by Lisle in Lackawanna County. Lisle, however, did not elect to pursue the Lackawanna County judgment further.

Lisle instead brought a complaint in civil contempt against Lowell in Wyoming County pursuant to the powers of enforcement provided in Section 401(b) of the Divorce Code effective February 12, 1988. Under Section 401.1(a), enforcement of a non-merged MSA under the provisions of the Code is permitted "to the same extent as though the agreement had been an order of the court *except as provided to the contrary in the agreement.*" There is no contrary provision in their MSA; accordingly, the original MSA between Lowell and Lisle which specifically provided for

modification only by written agreement between the parties could be enforced but not modified under the provisions of the Divorce Code.

Lowell's response to the civil contempt complaint was to attack the validity of the original MSA under Section 401 of the Divorce Code by seeking invalidation of the agreement and/or termination of his alimony obligation. The issue of the validity of the MSA, however, was decided finally when it was originally incorporated in the divorce decree. Because no appeal asserting fraud or mistake in the execution of the MSA was taken from the divorce decree, the MSA must be deemed to be valid, and the validity of the MSA must be deemed finally determined for purposes of any further proceeding. *Sonder, supra,* 378 Pa.Superior Ct. 481–483, 549 A.2d at 159 (1988); *Litwack, supra,* 289 Pa.Superior Ct. 409, 433 A.2d at 516 (1981).

Consequently, the Wyoming County court erred when it treated Lowell's response to Lisle's complaint as a petition for modification of a *support order.* As explained *supra,* there was no support order in existence; there was only a *contract* between Lisle and Lowell subject to either judgment and execution as a contract, or special enforcement authorized under the 1988 amendments to the Divorce Code.

The terms of the contract provide for cessation of the agreed upon alimony only on Lisle's "remarriage." The trial court stopped Lisle's support because she was "cohabiting" with a man. That determination, however, necessarily entailed an impermissible *modification* of the terms of the original MSA. Had Lowell wanted to stop paying alimony if Lisle began to "cohabitate" with another man, that could have been made part of the original MSA. We do not find the term "remarriage" sufficiently ambiguous to embrace "cohabitation", standing by itself. There must be, at the least, evidence of cohabitation *and* reputation of marriage to give rise to the presumption that a common law marriage has been entered into. *Canute v. Canute,* 384 Pa.Super. 60, 557 A.2d 772 (1989). We note that if the

"cohabitation" in this case later evolved into a common law marriage, the remarriage clause might *then* be triggered. As it was not at the time of the proceedings in the trial court, that court was constrained to enforce the MSA as written, and could not properly modify its terms.

## *Conclusion*

Based on the foregoing, the Wyoming County order is Vacated. The case is remanded to Wyoming County for action on Lisle's petition for civil contempt and enforcement of the MSA as written in accordance with the Divorce Code. Jurisdiction is relinquished.