J-A05035-19

2019 PA Super 133

| | | |
|---|---|---|
| BETH ANNE F. WEBER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK D. WEBER | : | |
| | : | |
| | : | No. 1095 WDA 2018 |
| v. | : | |
| | : | |
| | : | |
| MICHAEL WEBER | : | |
| | : | |
| | : | |
| APPEAL OF:  MICHAEL WEBER | : | |
| | : | |

Appeal from the Order Dated July 5, 2018
In the Court of Common Pleas of Crawford County Civil Division at No(s):
AD No. 1999-1298

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY MURRAY, J.:                    **FILED APRIL 26, 2019**

Michael Weber (Son) appeals[1] from the trial court's order granting the motion of Mark D. Weber (Father) for summary judgment, and dismissing Son's petition for special relief, which was filed in the divorce action between Father and Beth Anne F. Weber (Mother).[2]  After careful consideration, we

---

[1] As we discuss **infra**, this matter comes before this Court for the second time. **See Weber v. Weber**, 168 A.3d 266 (Pa. Super. 2017).

[2] The underlying petition for relief was filed by Son solely and did not request any payment or damages to be paid to Mother.  However, Son's notice of

hold that Father and Mother's property settlement agreement, which obligated them to share the costs of their children's college expenses, was a continuing contract. We further hold, however, that these obligations were subject to the statute of limitations,[3] which began to run when each child completed his or her college education. Applying this rationale to the case before us, we affirm.

We review the protracted procedural history of this case given the relevancy to Son's claims. Mother and Father were married and have two adult children: Son, born in 1988, and a daughter, born in 1994. In 1999, Mother and Father executed a written agreement (Agreement) as part of their divorce proceedings. Paragraph 18 of the Agreement provided in pertinent part:

> 18. <u>POST SECONDARY EDUCATION:</u> Parents shall share equally the reasonable costs of an appropriate undergraduate college or other post-secondary education for the children.

---

appeal and appellate brief both identify Mother (who has separate counsel from Son) as an additional "appellant." Regardless of Mother's personal support for Son's position and the fact that they have submitted joint filings in support of Son's petition, Mother is not an aggrieved party for purposes of appeal. *See* Pa.R.A.P. 501 ("Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order . . . may appeal therefrom."); *In re Jackson*, 174 A.3d 14, 24 (Pa. Super. 2017) ("An aggrieved party must have a substantial interest at stake. . . . [T]he party's interest must be adversely affected in a manner[ ] which is both direct and immediate."). Accordingly, Mother does not have standing to appeal, and we have amended the caption to reflect that Son is the sole appellant in this appeal.

[3] *See* 42 Pa.C.S.A. § 5525(a)(8) (generally, an action upon a contract must be commenced within 4 years).

- 2 -

Memorandum of Agreement, 11/10/99, at ¶ 18.  A divorce decree was entered in March of 2000.

Seven years later, in 2007, Mother filed a petition for special relief, averring that Son was a freshman at Florida State University (FSU), and Father was in breach of the Agreement because he failed to pay his share of Son's tuition as required by Paragraph 18.  Son requested, and the trial court granted him, intervenor status based on Son's interest as an intended beneficiary of the Agreement.  Subsequently, however, Mother filed a voluntary nonsuit, which stated that the parties agreed to withdraw the petition.  According to Son's filings in the underlying matter, he studied at FSU from 2007 through 2011.  Son's Pre-Hearing Narrative, 7/18/16.

There was no activity on Mother and Father's divorce docket until April of 2016, when Son (then approximately 28 years old) filed the instant petition for special relief.  The petition asserted, in pertinent part, that: Son "graduated" from FSU; the total cost of his "undergraduate education at [FSU] was approximately $166,148.71, one half of which is $79,988.44, plus interest as paid by [Son] on student loans, in the approximate amount of $24,000.00"; but Father has only paid $9,085.92.[4]  Son's Petition for Special Relief, 4/1/16, at ¶¶ 4, 11.  Father filed an answer and new matter, averring that Son's

_____

[4] The parties' pleadings presented numerous other issues which Son does not raise on appeal.

- 3 -

contract claim was barred by the 4-year statute of limitations at 42 Pa.C.S.A. § 5225(a)(8). Son responded that the Agreement was continuing in nature and thus not subject to the statute of limitations.

On July 18, 2016, Son filed a brief in support of his petition for special relief, which again stated that he "graduated from" FSU. Son's Brief in Support of Petition for Special Relief, 7/18/16, at 3. However, Son further stated, for the first time, that he attended "graduate school" and that Father was also obligated to pay half of those expenses:

> [Son] attended Palm Beach Atlantic University for pharmacy school until 2015. During his four years of **graduate school**, he incurred $196,455.00 in student loan debt solely to provide for tuition and housing. The language of the Agreement calls for the parents to share in "other post-secondary" education costs, and [Father] is responsible for one half or $98,227.50 of the **graduate school** expenses incurred.

*Id.* at 4-5 (emphases added).

Three days later, the trial court heard oral argument from the parties concerning various issues, including Father's defense of the statute of limitations. The trial court noted that Son's petition for special relief did not include graduate school expenses. N.T., 7/21/16, at 4-5. Son orally moved to amend the petition to include them, and the trial court allowed this amendment. *Id.* at 6, 13. The court did not enter any further rulings at this hearing.

On August 8, 2016, the trial court issued a memorandum and order dismissing Son's petition for lack of standing. The court reasoned that

because Mother withdrew her 2007 petition for special relief and did not participate in Son's 2016 petition, Son lacked standing to seek special relief under the Divorce Code. Son appealed. In an opinion published on August 11, 2017, a panel of this Court reversed, holding that Son had standing to seek relief and remanding for further proceedings. *Weber*, 168 A.3d 266.

Upon remand, Father filed a motion for summary judgment on April 26, 2018, again arguing that Son's 2016 petition was time-barred by the statute of limitations. Additionally, around this time, in answering Father's interrogatories, Son stated that he had **not** earned any undergraduate degree. Father's Motion for Summary Judgment, 4/26/18, Exhibit 11 (Son's Answers, Responses & Objections to Interrogatories at 1). Instead, Son claimed that when he had earned sufficient undergraduate credits to begin pharmacy school, he enrolled in Palm Beach Atlantic University.

Son and Mother filed a joint responsive brief to Father's summary judgment motion. This brief stated — on the same page — that Son did **not** graduate from FSU, yet incurred "graduate school costs" for pharmacy school. Son's Response & Brief, 5/16/18, at 19. In any event, the brief asserted that under the plain language of the Agreement, Father was required to pay for half of Son's pharmacy education expenses because the phrase "post-secondary" includes **any** education after high school. *Id.* at 17.

On July 5, 2018, the trial court issued a memorandum and order granting Father's motion for summary judgment and dismissing Son's petition

for special relief. The court agreed with Father that the Agreement did not create a continuing obligation, and thus Son's petition was subject to the statute of limitations. The court also found that Son's pharmacy school education was graduate-level and not included in Father's obligations under Paragraph 18. Memorandum & Order, 7/5/18, at 4-5 n.6 (noting that Son's claim, that he never obtained an undergraduate degree, was belied by his earlier filings). The court then reasoned that "Son's contractual relationship with [Father] ended in 2011 when he completed his studies at FSU," and concluded that Son's petition was time-barred by the statute of limitations. *Id.* at 9.

Son filed a timely motion for reconsideration, but before the trial court addressed it, Son filed a timely notice of appeal. *See Schoff v. Richter*, 562 A.2d 912, 913 (Pa. Super. 1989) ("[Pa.R.A.P. 1701] tolls the time for taking an appeal only when the [trial] court files 'an order expressly granting reconsideration . . . within the time prescribed by these rules for the filing of a notice of appeal.'"). Both the trial court and Son have complied with Pennsylvania Rule of Appellate Procedure 1925.

Son presents one issue, in two parts, for our review:

WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN HOLDING THAT THE STATUTE OF LIMITATIONS HAD EXPIRED AND GRANTING [FATHER'S] MOTION FOR SUMMARY JUDGMENT BECAUSE:

A. [SON'S] ATTENDANCE AT PHARMACY SCHOOL CONSTITUTES "OTHER POSTSECONDARY EDUCATION" UNDER THE TERMS OF THE AGREEMENT IN QUESTION AND

SON FILED THE PETITION FOR SPECIAL RELIEF WITHIN FOUR YEARS OF COMPLETING PHARMACY SCHOOL?

B. WHETHER THE AGREEMENT TO PAY FOR AN "APPROPRIATE UNDERGRADUATE COLLEGE OR OTHER POST-SECONDARY EDUCATION" CREATES A CONTINUING CONTRACT, THEREFORE, TOLLING THE STATUTE OF LIMITATIONS[?]

Son's Brief at 5.

We first note the standard of review of an order granting or denying a motion for summary judgment:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Kozel v. Kozel*, 97 A.3d 767, 772 (Pa. Super. 2014) (citation omitted). *See also* Pa.R.C.P. 1035.2(1) ("After the relevant pleadings are closed . . . any party may move for summary judgment in whole or in part as a matter of law . . . whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]").

Furthermore:

[W]e have held that a grant of relief under a petition for special relief based upon the interpretation of a marital settlement agreement "is within the sound discretion of the trial court and is an exercise of the court's equitable powers, and will not be

disturbed on appeal unless the trial court's decision is an abuse of discretion."

**delCastillo v. delCastillo**, 617 A.2d 26, 28-29 (Pa. Super. 1992) (citation omitted).

Son first contends that the trial court erred in finding that the phrase in "other post-secondary education" did not include his pharmacy school studies. Son avers that "post-secondary education" is an "expansive term," whose plain meaning includes any education after high school, and thus Paragraph 18 obligated Father to pay for Son's pharmacy school expenses. Son's Brief at 11, 19. Son acknowledges that in **delCastillo**, this Court held that language in a divorce property settlement-agreement — "to provide education for the children beyond the high school level" — "limited the obligation to undergraduate education." Son's Brief at 20, *citing* **delCastillo**, 617 A.2d at 27, 29. However, he reasons that **delCastillo**, which was decided 20 years ago, was "based on the idea that graduate school studies were not necessary," but now, "the need for a graduate degree is greater than ever." **Id.** at 21, *citing* Laura Pappano, *The Master's as the New Bachelor's*, N.Y. TIMES, July 22, 2011. Additionally, Son contends that Father was aware of, but did not object to, his "enter[ing] his undergraduate studies with a long-term goal of being a pharmacist." **Id.** at 22.

This Court has stated:

> "It is well established that in Pennsylvania, a settlement agreement between a husband and wife is governed by the law of contracts unless the agreement itself provides

otherwise." When interpreting a property settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function.

*delCastillo*, 617 A.2d at 28 (citations omitted). "[U]nder the law of contracts, the court must ascertain the intent of the parties when interpreting a contractual agreement." *Crispo v. Crispo*, 909 A.2d 308, 313 (Pa. Super. 2006) (citations omitted). "When construing agreements involving clear and unambiguous terms, a trial court need only examine the writing itself to give effect to the parties' understanding. A court may not modify the plain meaning of the words under the guise of interpretation." *Id.* (citations omitted). When interpreting the word "or" in a contract, "[w]e are bound to give 'or' its normal disjunctive meaning unless its ordinary meaning would 'produce a result that is absurd or impossible of execution or highly unreasonable . . . .'" *In re Fiedler*, 132 A.3d 1010, 1022 (Pa. Super. 2016) (citation omitted).

As acknowledged by Son, in *delCastillo*, the parties executed a marriage-separation property settlement agreement, which set forth the parties' obligation "to provide education for their children beyond the high school level." *See delCastillo*, 617 A.2d at 27. The parties' son sought specific performance of this provision, arguing that it obligated the parties to pay not only for his undergraduate college education, but also his post-graduate education. *Id.* at 28. The trial court disagreed, and on appeal, this Court affirmed:

"This [C]ourt has previously declined to require an extension

- 9 -

of the parental obligation to support children in their educational pursuits to postgraduate and professional school." . . . "[C]ase law sets the limits of parental obligation [for educational support] at college or majority[.]" Obviously, a contract specifically mandating a parent's obligation to pay for graduate school studies will be enforced. But where, as here, a contract is ambiguous as to the parents' intentions, we conclude that a twenty-seven year old married man with a child cannot expect the courts to enforce such a claim.

*Id.* at 29 (citations omitted).

Instantly, Son appears to argue that his pharmacy school education should be considered a part of his undergraduate studies. *See* Son's Brief at 19-20 (arguing that a doctor of pharmacy degree "is considered a first-professional degree" and "an entry level degree in the field of pharmacy," and that "[u]nder the facts of this case, Son was not required to earn an undergraduate degree before enrolling in pharmacy school"). However, as the trial court pointed out, this argument would contradict Son's own statements that he graduated from FSU, as well as his numerous references to his FSU studies as his "undergraduate" education and his pharmacy studies as "graduate school." *See* Son's Petition for Special Relief, 4/1/16, at ¶ 4; Son's Brief in Support of Petition for Special Relief, 7/18/16, at 3 ("[Son] attended and graduated from [FSU.]" Prior to [Son's] graduation from [FSU] . . . . "), 4 ("Following his graduation from [FSU, Son] enrolled in graduate school. He attended Palm Beach Atlantic University for pharmacy school until 2015."). Furthermore, Son created and filed spreadsheets, attached to his "Pre-Hearing Narrative," which bore the headings "Undergraduate Costs" and

"Graduate School Costs." Father's Motion for Summary Judgment, 4/26/18, Exhibit 9 (Son's Pre-Hearing Narrative, 7/18/16, at 1). Furthermore, Son acknowledges in his brief that he **finished** the undergraduate portion of his post-secondary education in May of 2011." Son's Brief at 11 (emphasis added).

We note that Son relies on webpages from the U.S. Department of Education's website, which, according to him, state that a Doctor of Pharmacy degree is considered both a first-professional degree and an entry-level degree. Son's Brief at 20. The trial court, however, pointed out that the same webpage stated that first-professional degrees, including a doctor of pharmacy, "are considered graduate-level programs in the U.S. system because the [sic] follow prior undergraduate studies." Memorandum & Order, 7/5/18, at 5 n.6, *citing* Son's Response & Brief in Opposition to Father's Motion for Summary Judgment, 5/16/18, Exhibit B (Affidavit of Son & "Structure of the U.S. Education System: First -Professional Degrees"[5]).

Furthermore, with respect to Son's insistence that a Doctor of Pharmacy degree is a "first-professional degree," we note that the same Department of Education webpage also included, as "first-professional degree titles," the

---

[5] Appellant's printed copy of this webpage, appearing in the record, provide the internet address http://www.ed.gov/international/usnei/edlite-index.html. However, as of the date of this writing, that address no longer links to the page cited by Appellant, and instead, we found the page at https://www2.ed.gov/about/offices/list/ous/international/usnei/us/professional.doc.

degrees of juris doctor (J.D.), doctor of medicine (M.D.), doctor of dental science (D.D.S.) and doctor of dental medicine (D.M.D.).

Nevertheless, Son also argues on appeal that the phrase, "an appropriate undergraduate college **or** other post-secondary education" in the Agreement, includes **both** undergraduate and graduate studies. Son's Brief at 20. Son thus contends that the statute of limitations began to run when he completed pharmacy school in 2015, and not in 2011 as decided by the trial court.

Son ignores, however, the trial court's discussion of the disjunctive term "or," which the court interpreted to mean **either** college or another type of post-high school education, but not both. ***See*** Memorandum & Order, 7/5/18, at 4 n.6. Given Son's admissions that he "graduated" from FSU before enrolling in pharmacy school, we agree with the trial court's analysis. ***See In re Fiedler***, 132 A.3d at 1022. In the absence of explicit language requiring Mother and Father to pay for any graduate program, the court did not abuse its discretion in rejecting Son's request to construe such a requirement. ***See delCastillo***, 617 A.2d at 28-29. Finally, to the extent that Son relies on Father's alleged "awareness and lack of objection" to Son's "long-term goal of being a pharmacist," such fact is not relevant to the court's interpretation of the terms of the Agreement. ***See Crispo***, 909 A.2d at 313 ("[A] trial court need only examine the writing itself to give effect to the parties' understanding."). Therefore, we discern no basis upon which to disturb the

court's finding that the Agreement did not obligate Father to pay for Son's pharmacy school expenses. We next consider Son's claims that the Agreement was a continuing contract and that it was not subject to the statute of limitations.

Son alleges that the trial court erred in finding that the Agreement was not a continuing contract. Son's Brief at 25. He maintains that property settlement agreements have been deemed continuing contracts when there were no specified deadlines for payment or no specific amounts, and that here, the Agreement did not set any dates for payment. Son relies, in pertinent part, on *Crispo*, 909 A.2d 308 (discussed *infra*).

This Court has explained:

"[A] question regarding the application of the statute of limitations is a question of law." . . . "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision."

*K.A.R. v. T.G.L.*, 107 A.3d 770, 775 (Pa. Super. 2014) (citations omitted).

The statute of limitations for contracts is four years. 42 Pa.C.S. § 5525(a)(8). "[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises." However, "[w]hen a contract is continuing, the statute of limitations will run either from the time the breach occurs or when the contract is terminated." *Crispo*[, 909 A.2d at 313.] "The test of continuity, so as to take the case out of the operation of the statute of limitations, is to be determined by the answer to the question whether the services were performed under one continuous contract, whether express or implied, with no definite time fixed for payment, or were rendered under several separate contracts."

*Id.* at 775-776 (some citations omitted). Property settlement agreements in

- 13 -

divorce actions have been held to be continuing contracts "where the duties of the parties are ongoing." **Crispo**, 909 A.2d at 315.

In **Crispo**, the parties' 1995 property settlement agreement provided that: (1) each party would assume responsibility for specified credit card debts; (2) the husband would pay the wife $22,500 for her interest in his business; (3) the wife agreed "to defer payment of this amount until August 1, 2001, providing [the husband did] not seek a decrease of the present child support Order;" and (4) if the husband filed a petition to decrease his court-ordered child support obligation, he would pay the wife $22,500 within 30 days of his filing the petition. **Crispo**, 909 A.2d at 309. Sometime in the fall of 1996, the husband filed a petition to modify the child support order, but did not pay wife the $22,500 as required by their agreement; he also did not pay the credit card balances that were allocated to him. **Id.** at 310. In 2004, the wife filed a petition for special relief, arguing that the husband failed to comply with the agreement. **Id.** at 309. The husband responded that her claims were barred by the statute of limitations, but the trial court disagreed. **Id.** at 310.

On appeal, this Court affirmed, concluding that the agreement was a continuing contract, and thus the statute of limitations did not apply. **Crispo**, 909 A.2d at 312-314. We observed that "both parties agreed to assume the payment of certain credit card balances and included no specific deadline by which those debts would be paid," and the agreement's provision that the husband would pay the wife $22,500 for her interest in his business did "not

- 14 -

provide a specific start date for the first installment." *Id.* at 313. We further noted: "[I]n the case of continuing contracts, such as postnuptial agreements, where the duties of the parties are ongoing, the statute of limitations generally does not run." *Id.* at 315.

We next consider the decision in *K.A.R.*, 107 A.3d 770, upon which the trial court in this case relied. In that case, the husband and wife's equitable distribution agreement provided, generally, that "if and when" the husband sold stocks in his business, the wife would receive 45% of the net proceeds.[6] *K.A.R.*, 107 A.3d at 773. Subsequently, the wife filed a petition to enforce the agreement, claiming that the husband sold a portion of his stocks, but failed to pay her proceeds. *Id.* at 773-774. The trial court denied relief on the basis that the wife's claims were time-barred by the statute of limitations. *Id.* at 775.

On appeal, this Court agreed, and rejected the wife's contention that the parties' agreement was a continuing contract. *K.A.R.*, 107 A.3d at 775-776. The *K.A.R.* Court considered, but distinguished, *Crispo*, emphasizing that the phrase "if and when [the stock] would be sold" "clearly set[ ] a 'definitive time fixed for payment': Wife's right to receive a percentage of Husband's remuneration from the sale of the . . . stock arose when Husband

---

[6] The facts in *K.A.R.* are more complex, but because the complexities are not relevant to our disposition of Son's claim, we omit them. *See K.A.R.*, 107 A.3d at 773-774.

- 15 -

disposed of this stock." *Id.* at 776-777. We further held that the agreement identified the amount owed to the wife — 45% of the net proceeds. *Id.* at 778.

Instantly, the trial court applied *K.A.R.* to conclude that "by implication, [Father's] obligations under [P]aragraph 18 of the Agreement would arise simultaneously if and when a child (having the aptitude and desire) attended an undergraduate college or undertook another type of post-secondary education." Memorandum & Order, 7/5/18, at 7 After careful review, we disagree that the "if and when" language in the *K.A.R.* agreement — which pertained to the single, isolated action of the husband's selling stocks — can be read into the Agreement in this case. Instead, the Agreement required the parties to share their children's college or undergraduate expenses, which presumably would span several years. Thus, the Agreement was a continuing contract. *See Crispo*, 909 A.2d at 315.

We agree, however, with the trial court's analysis that the agreement to share the children's college or undergraduate expenses was nevertheless subject to the statute of limitations. *See* Memorandum & Order, 7/5/18, at 7 ("Even if we were to conclude that the provision regarding the children's post-secondary education created a continuing contract, this does not mean that the statute of limitations could never become operative."). As stated in *Crispo*: "When a contract is continuing, the statute of limitations will run either from the time when the breach occurs or when the contract is in some

- 16 -

way terminated." **Crispo**, 909 A.2d at 313.  As discussed above, any breach of Paragraph 18 would have occurred, at the latest, "in 2011 when [Son] completed his studies at FSU," **see** Memorandum & Order, 7/5/18, at 9, and the four-year statute of limitations began to run at that time.  **See** 42 Pa.C.S.A. § 5525(a)(8); Memorandum & Order, 7/5/18, at 9.  Son's petition for special relief, filed in 2016, was thus out of time.

For the above reasons, we affirm the order granting Father's motion for summary judgment and dismissing Son's petition for relief.

Order affirmed.

P.J.E. Gantman joins the opinion.

Judge Shogan files a concurring dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/26/2019

- 17 -